IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLIVIA MACIEL EDELMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| LOYOLA UNIVERSITY CHICAGO, | ) |
| an Illinois not-for-profit corporation, | ) **Jury Trial Demanded** |
| | ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff, Olivia Maciel Edelman, for her Complaint against Defendant Loyola University Chicago, an Illinois not-for-profit corporation ("Loyola"), alleges as follows:

**NATURE OF ACTION**

1. Plaintiff, Dr. Olivia Maciel Edelman, brings this action against her former employer, Loyola, for willful violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA"). Specifically, Loyola discriminated against Dr. Edelman on the basis of age, and retaliated against her in violation of the ADEA by failing and refusing to consider her for tenure track and non-tenure track positions for which she was qualified and by refusing to renew her three-year renewable contract, resulting in her termination of employment.

**PARTIES, JURISDICTION & VENUE**

2. Dr. Edelman currently resides in Illinois and she resided in Illinois at all times during her employment with Loyola, and at the time of the events giving rise to her claims in this action.

3. Loyola is a not-for-profit corporation organized under the laws of Illinois with its principal place of business in Illinois. Loyola conducts business in Illinois, including within this

judicial district. Loyola employs professors such as Dr. Edelman to teach students at their campus.

4. This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims under the laws of the United States.

5. Venue is appropriate in this district under 28 U.S.C. § 1391 because Loyola conducts business in this judicial district and is subject to personal jurisdiction in this judicial district, and further because the events giving rise to Plaintiff's claims occurred in this judicial district.

## FACTS

6. Dr. Edelman was born on April 28, 1957. She is a highly skilled and experienced professor and a published author who is recognized as an authority on both Latin American and Mexican literature. Dr. Edelman received her Bachelor's Degree from the University of Wisconsin at Milwaukee, her Master's Degree from University of Illinois at Chicago, and her Ph.D. from the University of Chicago.

7. During her career, Dr. Edelman has held teaching positions at the University of Chicago, Northwestern University, the Honors College at the University of Illinois at Chicago, Northern Illinois University, and Loyola.

8. Dr. Edelman became a full-time faculty member at Loyola in 2010. For the 2010-2011 school year, Dr. Edelman was employed on a one-year contract. In 2011, Dr. Edelman was employed pursuant to a three-year renewable contract.

9. During her tenure at Loyola, Dr. Edelman was employed as an Instructor in the Department of Modern Languages and Literatures (the "MLL Department"), teaching a broad

range of subjects, including courses in Spanish, Spanish Composition, Spanish Literature, and Latin American and Mexican Literature.

10. On or about February 7, 2012, Dr. Edelman received her annual performance review at Loyola and received an overall near-perfect rating of five out of a possible five with superlative comments from the Chair of the MLL Department.

11. On or about April 15, 2012, Dr. Edelman received a merit-based raise in pay from Loyola.

12. On or about September 19, 2012, Dr. Edelman became aware that Loyola had posted an opening for a tenure track position as Assistant Professor of Spanish, Latin American Literature, and Culture (the "Tenure Track Position").

13. One of the requirements for the Tenure Track Position was a Ph.D. in Latin American Literature, which Dr. Edelman possessed from the University of Chicago.

14. On or about October 12, 2012, Dr. Edelman applied for the Tenure Track Position.

15. Along with the application materials, Dr. Edelman submitted letters of recommendation from the former chair of the MLL Department, Dr. Wiley Feinstein, who strongly supported Dr. Edelman's candidacy, and various other scholars of Latin American studies.

16. At the time of her application, Dr. Edelman was 55 years old.

17. Despite Dr. Edelman's near-perfect performance review, her significant contributions to the MLL Department during her tenure as a full-time faculty member, a glowing recommendation from the former Chair of the MLL Department, her extraordinary level of publications, and her recognition as a leading figure in her field, she was not even granted an

interview for the position.

18. On January 14, 2013, Dr. Edelman received an email from the administration at Loyola informing her that she was not under consideration for the Tenure Track Position.

19. All of the finalists for the Tenure Track Position were in their late 20s and 30s, had less teaching experience than Dr. Edelman, and had far fewer publications than Dr. Edelman.

20. The individual hired for the Tenure Track Position was in her 30s and had a Ph.D. in Comparative Literature. This individual lacked a Ph.D. in Latin American Literature, which was listed as a specific requirement for the Tenure Track Position in the job announcement for the position.

21. After Dr. Edelman was informed she would not be considered for the Tenure Track Position, she began questioning the administration and faculty at Loyola regarding the fact that only younger candidates (*i.e.*, those who were less experienced and more recent recipients of a Ph.D.) were considered for the Tenure Track Position, even though they were less qualified than Dr. Edelman.

22. Dr. Edelman questioned Loyola's consideration of only younger candidates for the Tenure Track Position and repeatedly sought an explanation from Loyola for its failure to consider and interview her for the position. Loyola refused to provide Dr. Edelman any explanation for its failure to consider her for the Tenure Track Position or for the MLL Department's preference for younger candidates.

23. Dr. Edelman communicated her complaints regarding Loyola's failure to consider her and the favoritism given to younger candidates to several administrators, including the new Chair of the Modern Languages Department, Bernadita Llanos, and the new Dean of Arts and Science, Reinhart Andress.

24. On or about January 24, 2013, Bernadita Llanos lowered Dr. Edelman's performance rating from a rating of 5 she previously received, to an overall rating of 4. Specifically, Dr. Llanos rated Dr. Edelman as a 3.7 in Teaching, a 4 in Professional Development/Service, and a "N/A" in Research Scholarship, resulting in an overall performance rating of 4. Loyola failed to rate Dr. Edelman on Research Scholarship, one of Dr. Edelman's strongest areas.

25. On February 5 and February 6, 2013, Dean Andress sent harsh emails to Dr. Edelman, indicating that by questioning why younger, less experienced candidates were given preference over her, she was engaging in "unprofessional lobbying" that would "risk alienating colleagues." Dean Andress ordered Dr. Edelman to "desist from any further activities."

26. On or about March 5, 2013, Dean Andress revised Bernadita Llanos's performance review of Dr. Edelman and further lowered Dr. Edelman's review to reflect an overall rating of 3+ instead of 4 which indicated that, although Dr. Edelman was still exceeding expectations, she did not exceed expectations to the same degree as she had when she was rated a 4 or a 5.

27. On May 14, 2013, Dean Andress issued a letter to inform Dr. Edelman that her three-year renewable contract would not be renewed and that she would be terminated at the end of her current contract term in June 2014. This decision was contrary to Loyola's well-established practice that three-year renewable contracts of instructors are renewed by default absent a serious lack of performance or dereliction of duties.

28. Dean Andress and Dr. Llanos made the decision not to renew Dr. Edelman's contract in violation of established procedures, which require a review of the decision by the Departmental Advisory Committee ("DAC"). Dean Andress and Dr. Llanos by-passed DAC

review and made the termination decision unilaterally.

29. Loyola's refusal to renew Dr. Edelman's contract resulted in her loss of employment, effective June 30, 2014.

30. Loyola contends that it terminated Dr. Edelman because of significant curriculum changes for the Department of Modern Languages.

31. Loyola's stated reason for terminating Dr. Edelman's contract is false and pretextual. In fact, the MLL Department did not significantly change its curriculum. Rather, Loyola hired substantially younger individuals to continue to teach the same courses formerly taught by Dr. Edelman.

32. Loyola hired two individuals in 2014, both in their 30s, to replace Dr. Edelman as the instructor in all of her courses. One of the individuals hired did not even have a Ph.D. as of the time of her hire.

33. On October 25, 2013, Dr. Edelman filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

34. On or about October 30, 2013, Loyola posted another available job opening for a Lecturer Position in Spanish ("Non-Tenure Position"), which was a three-year, full-time, renewable, non-tenure track position for the 2014-2015 school year.

35. The duties and responsibilities of the Non-Tenure Position very closely mirrored the duties and responsibilities Dr. Edelman had been performing for Loyola.

36. Dr. Edelman applied for the Non-Tenured Position and, despite her qualifications and experience, Loyola did not consider her or hire her for the position.

37. Loyola instead hired a recent Ph.D. in his 30s with fewer publications and less teaching experience.

38. On May 9, 2014 Dr. Edelman filed an amended charge with the EEOC alleging discrimination and retaliation on the basis of her age.

39. As a result of Loyola's refusal to renew her three-year renewable contract and its refusal to hire her for other available positions for which she was qualified, Dr. Edelman's employment with Loyola terminated on June 30, 2014.

40. Dr. Edelman has continued to seek employment with Loyola and has applied for other teaching positions for which she is qualified, but Loyola has refused to hire her for any of the positions sought.

41. The EEOC issued a notice of right to sue letter, which Dr. Edelman received on May 17, 2016, a copy of which is attached hereto as Exhibit "A".

## COUNT I – ADEA VIOLATION

42. Dr. Edelman re-alleges and incorporates by reference the allegations contained in paragraphs 1-41 as if fully set forth herein.

43. Dr. Edelman was an "employee" of Loyola and a "person" within the meaning of 29 U.S.C. § 630, and therefore, entitled to the rights and protections afforded by the ADEA.

44. Loyola is an "employer" within the meaning of 29 U.S.C. § 630, and therefore subject to the requirements of the ADEA.

45. At all times relevant to this cause of action, Dr. Edelman was over 40 years old.

46. Dr. Edelman suffered multiple adverse employment decisions, including: Loyola's refusal to consider her for the Tenure Track Position; Loyola's decision to terminate her employment by refusing to renew her contract; Loyola's refusal to consider her for the Non-Tenure Track position; Loyola's refusal to consider her for other positions for which she is qualified.

47. Dr. Edelman was well qualified for all the positions for which she applied.

48. Dr. Edelman was treated less favorably than other similarly situated employees and applicants for employment due to her age.

49. Loyola hired individuals substantially younger than Dr. Edelman for all the positions for which Dr. Edelman applied.

50. Loyola unlawfully and willfully discriminated against Dr. Edelman because of her age.

51. Loyola's proffered reason for the adverse employment actions – a supposed change in curriculum – was a pretext for illegal discrimination and retaliation.

52. As a direct and proximate result of said acts, Dr. Edelman has suffered loss of employment, loss of income, and loss of other employee benefits.

WHEREFORE, Plaintiff Olivia Edelman respectfully requests that judgment be entered in her favor and against Loyola, and that the Court enter an Order:

a) Finding that the acts and practices complained of herein constitute a willful violation of the ADEA;

b) Ordering Defendant to reinstate Plaintiff's employment at a position and salary she would have attained but for Defendant's illegal conduct;

c) Awarding Plaintiff lost wages and benefits, including back pay, front pay, and interest;

d) Awarding Plaintiff liquidated damages;

e) Awarding Plaintiff her costs incurred in this action, including reasonable attorneys' fees and expert witness fees; and

f) Granting Plaintiff such other and further relief as the Court deems just and

proper, including interest on such sums awarded herein to Plaintiff.

## COUNT II – ADEA RETALIATION

53. Dr. Edelman re-alleges and incorporates by reference the allegations contained in paragraphs 1-52 as if fully set forth herein.

54. At all times during her employment with Loyola, Dr. Edelman performed her job in a commendable manner and always met or exceeded performance expectations.

55. Commencing on or about January 19, 2013, Dr. Edelman engaged in protected activity by first inquiring about why she had not been interviewed for a position for which she applied and for which she was well qualified and later complaining to her superiors that she was not considered or selected for the Tenure Track Position due to her age. On or about October 25, 2013, Dr. Edelman engaged in further protected activity by filing a charge of discrimination with the EEOC.

56. After Dr. Edelman engaged in this protected activity, Loyola retaliated by lowering her overall performance rating, refusing to renew her three-year renewable contract, and failing to consider or hire her for other available positions, including the Non-Tenure Position.

57. A reasonable person would have found the actions to be adverse.

58. Dr. Edelman was treated less favorably than other similarly situated employees and applicants for employment due to her protected activity.

59. As a direct and proximate result of said acts, Dr. Edelman has suffered loss of employment, loss of income, and loss of other employee benefits.

WHEREFORE, Plaintiff Olivia Edelman respectfully requests that judgment be entered in her favor and against Loyola, and that the Court enter an Order:

a) Finding that the acts and practices complained of herein constitute a willful violation of the ADEA;

b) Ordering Defendant to reinstate Plaintiff's employment at a position and salary she would have attained but for Defendant's illegal conduct;

c) Awarding Plaintiff lost wages and benefits, including back pay, front pay, and interest;

d) Awarding Plaintiff liquidated damages;

e) Awarding Plaintiff her costs incurred in this action, including reasonable attorneys' fees and expert witness fees; and

f) Granting Plaintiff such other and further relief as the Court deems just and proper, including interest on such sums awarded herein to Plaintiff.

## JURY DEMAND

Plaintiff Olivia Edelman requests a jury on all issues so triable.

Respectfully submitted,

S/Wayne B. Giampietro

Wayne B. Giampietro
Poltrock & Giampietro
Attorneys for Plaintiff, Olivia Edelman
123 W. Madison, Suite 1300
Chicago, Illinois 60602
312-236-0606
312-236-9264 (Facsimile)
wgiampietro@giampietrolaw.com