# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| OLIVIA MACIEL EDELMAN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 16 CV 07971 |
| LOYOLA UNIVERSITY CHICAGO, | ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Olivia Edelman filed a complaint against Loyola University of Chicago alleging that it discriminated against her because of her age when it did not select her to interview for a tenure track professor position and retaliated against her after she complained about the selection process. Loyola moved for summary judgment. The motion is denied in part and granted in part: Edelman has produced sufficient evidence to support a jury verdict in her favor with respect to her discrimination claim but has failed to present evidence that she engaged in a statutorily protected activity as required to succeed on a retaliation claim.

## BACKGROUND

In 2010, Loyola University of Chicago hired Olivia Edelman, then 53 years old, for a one-year lecturer position. Defendant's Response to Plaintiff's Rule 56 Statement of Facts ("Response to PSOF") ¶ 6, ECF No. 86. At the end of the year, Loyola re-hired Edelman for a three-year renewable, non-tenure track position in Loyola's Modern Languages and Literatures Department teaching classes dealing with Spanish composition, conversation, and grammar, as well as Spanish and Latin literature. *Id.* at ¶ 7.

In September 2012, Loyola posted an advertisement for a tenure track Assistant Professor of Spanish position. *Id.* at ¶ 9. A search committee comprised of Loyola faculty members David

Posner, Deni Heyck, Alrick Knight, Elizabeth Lozano Rocha, and Brian Lavelle was formed to select an individual to fill the position. Posner was appointed as Chair of the committee. *Id.* at ¶¶ 15-16. The job posting explained that the field of specialization for the position was Latin American Literature, and described the minimum qualifications required for the job as follows:

> The successful applicant will have a Ph.D, in Latin American Literature, by the time of hire, and a strong commitment to excellence in teaching at all levels. Candidates for the position must also clearly demonstrate the potential for distinguished scholarship, grant-funded research, and student mentorship.

Plaintiff's Ex. J-6, ECF No 77.[1]

Edelman, who at the time held a Ph.D. in Romance Languages and Literatures with a specialization in Latin American Literature, applied for the position. Plaintiff's Ex. J-21, ECF No. 80. Out of approximately 200 initial applicants, the search committee selected 20 initial interviewees and eventually narrowed that pool to four finalists. Defendant's Statement of Facts ("DSOF") ¶ 17, ECF No. 57. In January 2013, Edelman learned that she had not been selected for even the first round of interviews. Edelman, believing that she was more qualified than the four finalists who were brought to campus, met with Department Chair Dr. Bernadita Llanos in early February to raise her concerns about the search process. Response to PSOF at ¶ 22. As a follow up to that meeting, Edelman wrote to Dr. Llanos expressing her belief that "there was a significant procedural error in the Search Process that needs to be corrected." Plaintiff's Ex. J-9, ECF No. 78. The next day, Dr. Llanos e-mailed Posner to inform him of Edelman's concerns. In her e-mail, Dr. Llanos requested that the search committee provide an explanation for why Edelman had not been selected to interview given that Edelman had "more experience in teaching" than the finalists, an

---

[1] Loyola states in its response to Edelman's Rule 56 Additional Statement of Facts that the advertisement "does not purport to list all of the qualifications for the tenure track position of Assistant Professor of Spanish." Response to PSOF ¶ 9, ECF No. 86. To the extent Loyola suggests that there were other minimum job requirements, that statement is unsupported by the record.

2

"established publishing record," and "excellent" teaching evaluations in her literature classes. Plaintiff's Ex. J-3, ECF No. 76.

Dr. Posner did not take kindly to Edelman's aspersions about the search process. He responded to Dr. Llanos by stating that "[t]he search committee was not interested merely in quantity of publications or length of experience. If this were the case, then we would simply hire the oldest person and be done with it." According to Posner, the quality of Edelman's scholarship did not "measure up" to that of the finalists. He also added that Edelman's "astoundingly unprofessional behavior clearly demonstrates why she is not a suitable candidate for the position. No department could tolerate this sort of thing." Plaintiff's Ex. J-4, ECF No. 77. Posner then forwarded Dr. Llanos's e-mail and his response to Reinhard Andress, Loyola's Dean of the College of Arts and Sciences. *Id.* On February 5, 2013, Andress e-mailed Edelman asking her to desist from "trying to influence the search for the Latin Americanist position" and instructing her to "accept and respect the decisions by the search committee." Plaintiff's Ex. J-10, ECF No. 78. At some point, the search committee destroyed all documents that they had used or developed during the search process.[2] Response to PSOF at ¶ 30.

On March 5, 2013, Andress lowered Edelman's teaching rating from a 3.7 out of 5, which Dr. Llano's had given her, to a 3 (which correlated with "meeting expectations") and her overall instructor rating from 4 to "3+" for the stated purpose of "being consistent across the department in these assessments" in light of Edelman's "below-average teaching evaluations for the courses

---

[2] Loyola "disputes" this fact, arguing that it is not supported by the portion of Posner's deposition cited by Edelman because Posner stated only that the committee was "instructed" to destroy its notes, not that it actually did so. *See* Plaintiff's Ex. G 29:14-16, ECF No. 73. But Loyola cannot genuinely claim that the committee did not destroy the documents: Posner testified in a later portion of his deposition that interview notes were in fact destroyed at the end of the process like "all the other stuff was," *Id.* at 53:1-9, and Loyola does not point to any other evidence suggesting that the documents still exist.

3

and as an instructor." Plaintiff's Ex. J-5, ECF No. 77. Then, in April 2013, Andress informed Edelman that her non-tenure track contract would not be renewed due to "changing curricula," but that once the exact details of the curricular needs were determined, she was "welcome to apply" for a different position. Plaintiff's Ex. J-18, ECF No. 79.

Edelman filed a Charge of Discrimination with the EEOC on October 25, 2013 alleging age discrimination. DSOF at ¶ 64. On October 30, 2013, Loyola posted a job advertisement for a three-year non-tenure track lecturer position. Edelman applied but was not hired. Compl. at ¶¶ 34, 36. In May 2014, Edelman filed an amended charge with the EEOC alleging discrimination and retaliation. After receiving a right to sue letter, she initiated this suit alleging that Loyola violated the ADEA by discriminating against her because of her age and retaliating against her for raising her concerns. After more than a year of discovery, Loyola filed a motion for summary judgment.

## DISCUSSION

### I. Compliance with Local and Federal Rules

As a preliminary matter, the Court must address Loyola's argument that Edelman failed to comply with the Northern District of Illinois' Local Rules in responding to its motion. The Local Rules require a party moving for summary judgment to file a statement consisting of short numbered paragraphs laying out the material facts it contends are undisputed. LR 56.1(a)(1)(3). The opposing party must then file 1) a response to each numbered paragraph including, in the case of a disagreement, a specific reference to the record and 2) its own statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment. LR 56.1(b)(3)(B), (C). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." LR 56.1(b)(3)(C).

Loyola argues that its statement of facts must be deemed admitted because Edelman either failed to cite specific parts of the record in her responses or cited to inadmissible declarations. It is true that Edelman frequently cites to entire multi-page exhibits in her responses to Loyola's statement of facts instead of including "the line, paragraph, or page number where the supporting material may be found in the record" as required by this Court's standing order.[3] *See* Case Procedures, https://www.ilnd.uscourts.gov/judge-info.aspx?79eF+7uiX7ewBj/ITKrjoA==; Plaintiff's Response to DSOF, ECF No. 65. And "a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Unif. Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). That said, Edelman's own statement of facts properly cites to specific paragraphs or pages, *see* Plaintiff's Statement of Undisputed Material Facts ("PSOF"), ECF No. 66, so the Court is not totally without a "roadmap" for its analysis. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994). Accordingly, to the extent the facts set forth in that document controvert the facts set forth by Loyola, Loyola's statements will not be deemed admitted.

Whether the facts set forth by Edelman are supported by admissible evidence is a separate issue. Federal Rule of Civil Procedure 56(c)(4) permits the use of affidavits or declarations to support or oppose a motion for summary judgment so long as they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Edelman has submitted, among other things, three unsworn declarations: her own, Wiley Feinstein's (the former chair of Edelman's

---

[3] Edelman's responses also include various statements that go beyond mere admission or denial. *See, e.g.*, Plaintiff's Response to DSOF at ¶ 9 ("Plaintiff objects to this statement as it selects language from the Faculty Handbook which is taken out of context . . . ."). The Court will disregard any argumentative, conclusory, or unsupported portions of Edelman's responses. *Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 238 F. Supp. 2d 1024, 1029 (N.D. Ill. 2003), aff'd, 354 F.3d 661 (7th Cir. 2004).

department at Loyola), and Herbert Richardson's (the Editor-in-Chief of a scholarly press that published a book written by Edelman). *See* Plaintiff's Exs. B-D, ECF No. 67. Loyola urges the Court to disregard these declarations because they fail to comply with 28 U.S.C. § 1746, which allow unsworn declarations to be substituted for sworn declarations so long as they are "dated and signed by the declarant 'under penalty of perjury' and verified as 'true and correct.'" *Aberman v. Bd. of Educ. of City of Chicago*, 242 F. Supp. 3d 672, 677 (N.D. Ill. 2017).

The Court permitted Edelman to amend her declaration, which now includes a paragraph at the end stating that she declares "under penalty of perjury that the foregoing is true and correct" and is properly signed and dated. Plaintiff's Amended Ex. B, ECF No. 84. Loyola's argument is therefore moot with respect to Edelman's declaration. The other two declarations, however, do not include language suggesting that they were made "under penalty of perjury." Plaintiff's Ex. C, Ex. D. While the Seventh Circuit has held that unsworn declarations not subscribed under penalty of perjury do not comply with former Federal Rule of Civil Procedure 56(e), *see DeBruyne v. Equitable Life Assurance Society*, 920 F.2d 457, 471 (7th Cir. 1990), it has not had occasion to address whether such declarations comply with the version of the Rule as amended in 2010—now Rule 56(c)(4)—which no longer requires a formal affidavit. *Jajeh v. County of Cook*, 678 F.3d 560, 568 (7th Cir. 2012). This Court is nevertheless inclined to follow the other courts in this district that have continued to exclude noncompliant unsworn declarations from their summary judgment analyses, *see, e.g., Aberman*, 242 F. Supp. 3d 672, 677 (N.D. Ill. 2017); *Barker v. Quick Test, Inc.*, 13 C 4369, 2016 WL 1019708, at *2 (N.D. Ill. Mar. 15, 2016), particularly given the fact that Feinstein's and Richardson's declarations explicitly refer to 28 U.S.C. § 1746 yet nevertheless fail to comply with its directives. That said, the Court need not definitively resolve

the issue at this time because, as discussed below, the outcome would be the same with or without consideration of those declarations.

## II. Discrimination Claim

The ADEA prohibits employers from discriminating against workers 40 years of age and older "because of" their age. 29 U.S.C. § 623(a)(1). This means that to prevail on an ADEA claim, a plaintiff must prove that his or her age was the "but-for" cause of a legally recognized adverse employment action—it is not enough to show that age was *a* motivating factor. *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)). Age is a "but-for" cause of an adverse employment action if it "played a role in the employer's decision-making process and had a determinative influence on the outcome." *Van Antewerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010).

To establish causation, a plaintiff may present "direct or circumstantial evidence" of age discrimination or proceed under the *McDonnell Douglas* burden-shifting approach. *Wrolstad*, 911 F.3d at 454. Under either method, the ultimate question the Court must address in ruling on a defendant's motion for summary judgment is whether a jury could reasonably conclude that the employer discriminated against the plaintiff because of his or her age. *Id.*; *see also Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). If so, it must deny the motion. In answering that question, the Court construes all facts and draws all reasonable inferences in the light most favorable to Edelman, the non-moving party. *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 673 (7th Cir. 2012).

Edelman asserts that Loyola discriminated against her because of her age when it failed to hire her for the Assistant Professor of Spanish tenure track position.[4] Loyola does not dispute that its decision not to hire Edelman constitutes an actionable adverse employment action; it argues only that Edelman has failed to produce evidence suggesting that Loyola would not have made that employment decision but-for Edelman's age.

To establish a prima facie case under *McDonnell Douglas*, the framework Edelman appears to invoke, she must show that 1) she was a member of a protected class; 2) she was qualified for the position sought; 3) she was rejected for the position; and 4) the employer hired someone substantially younger who was not better qualified for the position. *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 892 (7th Cir. 2016).[5] If Edelman can do so, the burden shifts to Loyola to offer a legitimate, nondiscriminatory reason for the adverse employment action. Then, the burden shifts

---

[4] In her complaint, Edelman alleged that Loyola also discriminated against her by terminating her non-tenure track employment contract and refusing to interview her for a different non-tenure track lecturer position. Compl. ¶ 46. Loyola argues that Edelman cannot show that those actions were taken because of her age. Defendant's Memorandum in Support of its Motion for Summary Judgment 11-13, ECF No. 55. Edelman does not respond to that argument, choosing instead to address the non-renewal of her contract and Loyola's refusal to interview her for the other position only in the context of her retaliation claim. As such, she has forfeited any argument that those actions form the basis for a discrimination claim. *See Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017) ("Failure to respond to an argument generally results in waiver, and failure to present an argument to the district court usually means we will not address it on appeal."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (failure to respond to an argument results in waiver).

[5] While courts often state that a prima facie case under *McDonnell Douglas* requires that the comparator be "outside the protected class," that element is not required in an age discrimination action. That is because the ADEA "does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). In other words, an over-40 ADEA plaintiff can prevail even if he or she lost out on a job to another over-40 individual so long as he or she produces evidence that the employment decision was impermissibly based on age. Such an inference cannot be drawn, however, unless the favorably treated comparator is "substantially younger" than the plaintiff. *Morrow v. Donahoe*, 564 Fed. Appx. 859, 861 (7th Cir. 2014).

back to Edelman to show that the stated reason is a pretext for discrimination. The first and third prongs of Edelman's prima facie case are not in dispute, and Loyola does not dispute that, as to the fourth, the 20 initial interviewees and four finalists were all substantially younger than Edelman.[6]

To establish a prima facie case, that leaves only the question of whether Edelman was qualified for the position. And because Loyola's stated reason for not selecting Edelman to interview is that other candidates were more qualified, the remaining aspect of the prima facie case merge with the pretext analysis. *See Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dept.*, 510 F.3d 681, 687 (7th Cir. 2007) (explaining that the analysis merges when the plaintiff argues that the employer is lying about elements required to establish prima facie case). The question, then, is whether Edelman has produced sufficient evidence of pretext to allow a reasonable jury to conclude that Loyola rejected her application because of her age. Although her evidence is not overwhelming, it allows her to clear this low hurdle.

"The pretext analysis focuses on whether the reason was honest and not whether it was accurate or wise." *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). Loyola maintains

---

[6] At the time Edelman applied for the position, she was 55 years of age. PSOF ¶ 13. In her response brief, she states that of the 20 individuals selected for initial interviews, the oldest was 47 years of age and thirteen were younger than 40. Plaintiff's Response Brief 3, ECF No. 64. In support, she cites only to "Exhibit 2, Exhibit 3." The Court presumes that citation refers to attachments to her declaration, *see* Plaintiff's Ex B, ECF No. 67 (as amended by ECF No. 90), which include a roster of the 20 initial interviewees and their ages as approximated by Edelman based on "searching the internet." *Id.* at ¶ 30. The Court is skeptical about the reliability of that document, but Loyola does not question the gist of Edelman's assertions; indeed, it seems to take the position that none of the initial interviewees were over the age of 40. *See* DSOF at ¶ 31 ("The Committee never discussed the fact that none of the Finalists or Original Interviewees were over 40 during the evaluation process."). Because "a ten-year age difference with a comparator is presumed to be substantial," *Morrow*, 564 Fed. Appx. at 861, and Loyola has not made any argument to the contrary, the Court assumes that this aspect of Edelman's prima facie case is undisputed.

that Edelman has not presented proof of a lie. But the Seventh Circuit has explained that a "smoking gun" is not required to establish pretext. Dishonesty may be inferred from, among other things, evidence that similarly situated employees outside the protected class received systematically better treatment, "whether or not rigorously statistical,"[7] as well as evidence of suspicious or ambiguous comments directed towards members of the protected class.[8] *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 778 (7th Cir. 2013).

Here, the ages and characteristics of the 20 initial interviewees are not well established by the record, and neither are the ages and characteristics of the 180-odd applicants who were not

---

[7] Loyola cites to *Radue v. Kimberly-Clark Corp.*, 219 F. 3d 612, 617 (7th Cir. 2000) and *Plair v. EJ Brach & Sons, Inc.*, 105 F.3d 343, 348-349 (7th Cir. 1997) in support of its proposition that statistics are not a proper means to prove discrimination in a disparate treatment case. But *Radue* does not suggest that statistical evidence is **never** relevant. The Seventh Circuit there merely rejected the specific statistics that the plaintiff had presented because they did not assess comparable individuals. And while *Plair* states that "statistics are improper vehicles to prove discrimination in disparate treatment (as opposed to disparate impact) cases," 105 F.3d at 349, in context, that statement is better understood as suggesting only that statistics "**standing virtually alone**" are insufficient to establish discriminatory intent. *Id.* In this case, rough statistics are one of many factors arguably pointing toward age discrimination.

[8] Loyola also argues that the age composition of the search committee belies an inference of discrimination because four of the five members were 50 years or older. Defendant's Memorandum of Law in Support of Motion for Summary Judgment at 10. The fact that the decision-maker is in the same protected class as the plaintiff, however, does not immunize an employer from employment discrimination claims. *See generally Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998) ("[N]othing in Title VII necessarily bars a claim of discrimination "because of ... sex" merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex."); *Williams v. Wendler*, 530 F.3d 584, 587 (7th Cir. 2008) ("There can, it is true, be 'racial' discrimination within the same race . . . ."). This case alleges age discrimination under the ADEA, not sex or race discrimination under Title VII, but the principles set forth in *Oncale* and *Williams* seem equally applicable here. *See* Types of Discrimination: Age, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, https://www.eeoc.gov/laws/types/age.cfm ("Discrimination can occur when the victim and the person who inflicted the discrimination are both over 40."). While the age composition of the search committee does seem to render Edelman's claim less plausible, it is up to the jury, not the Court, to weigh that evidence.

selected to interview. But Edelman maintains that she discerned from materials provided to her by the EEOC that most of the 20 initial interviewees and all four finalists were in their thirties, Plaintiff's Ex. E-1 102:6-13, ECF No. 69, and Loyola makes no argument to the contrary. Loyola does argue in a footnote that Edelman has not set forth any evidence establishing that the employees included in those rough statistics were similarly situated to her. Defendant's Reply Brief 8 n.3, ECF No. 85. As the Seventh Circuit has explained, however, the inquiry into whether a comparator is similarly-situated is "flexible" and "common-sense." *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012). The other applicants applied for the same job and were assessed by the same search committee. Further, the evidence presented regarding the characteristics of the four finalists, *see* Plaintiff's Ex. J-24, does not suggest that their backgrounds and qualifications were so different from Edelman's as to preclude meaningful comparison. *See Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 723 (7th Cir. 2018) (explaining that comparators are similarly situated where they dealt with the same supervisor, were subject to the same standards, and engaged in conduct without such differentiating circumstances as would distinguish the employer's treatment of them). A jury could therefore reasonably infer from this evidence that the search committee was improperly focused on the age of the applicants.

There is also evidence in the record of suspicious age-related comments. For example, Posner explained that the committee did not interview Edelman because it "was not interested merely in quantity of publications or length of experience. If this were the case, then we would simply hire the oldest person and be done with it. We were interested above all in quality and potential; this is, after all, an Assistant Professor position." Plaintiff's Ex. J-4. Of course, one might infer from this statement that the committee did not consider age at all, focusing only on age-neutral attributes such as the quality of the applicants' publications. But one might also infer from

11

Posner's juxtaposition of "not simply hiring the oldest person" on the one hand and the committee's desire to hire someone with "potential" on the other that the committee was specifically interested in hiring "younger" applicants *because* they were younger. True, seeking someone with "potential" does not necessarily mean seeking someone "young." *See Wrolstad*, 911 F.3d at 455 ("potential for longevity" not a proxy for age where employer tied potential to age-neutral factors such as enthusiasm for the position). Here, though, Posner explicitly conflates length of experience and number of publications with age in a way that suggests he might also impermissibly conflate "potential" with fewer publications and, accordingly, youth. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) (explaining that age and pension status are analytically distinct such that a decision based on years of service is not necessarily age-based but leaving open the possibility that an employer who supposes a correlation between the two factors and acts accordingly may engage in age discrimination). In other words, Posner's comment could be read as "indirectly invok[ing] the disparaging stereotypes" that the ADEA seeks to prohibit—here, that older people have less "potential." *Carson v. Lake County, Indiana*, 865 F.3d 526, 534 (7th Cir. 2017). Because the comment is ambiguous, "[a] jury is the appropriate body to evaluate [its] significance . . . ." *Mullin,* 732 F.3d at 778.[9]

Additionally, dishonesty may be inferred from "flagrant inaccuracies or inconsistencies in an employer's proffered reason for an employment decision." *Baker v. Macon Res., Inc.*, 750 F.3d

---

[9] Jurors might also reasonably construe Posner's ambiguous and self-congratulatory statement that the committee was scrupulously above-board in its treatment of "sensitive issues relative to certain candidates," Plaintiff's Ex. J-4, as similarly, albeit inadvertently, exposing an inappropriate focus on potentially discriminatory criteria. Jurors could further conclude that Posner's hostile reaction to learning of Edelman's inquiries concerning the selection process (deeming her inquiry, which was endorsed by both her current and former department chairs, to be "astoundingly unprofessional behavior") as sufficiently over-the-top that it calls into question the credibility of Dr. Posner's proffered rationales for why Edelman was not selected to interview.

674, 677 (7th Cir. 2014). Edelman's argument in this respect is that many of the search committee's specific justifications for not selecting her to interview are demonstrably false. For example, Loyola maintains that Edelman's application raised red flags because one of her books was published with Edwin Mellen Press, a "pay-to-play publisher" (*i.e.*, a publisher that does not subject its publications to rigorous peer review). Defendant's Memorandum in Support of its Motion for Summary Judgment 8, ECF No. 55. In Posner's deposition, he stated that it is "common knowledge in the profession" that Mellen Press does not operate in accordance with industry standards. Plaintiff's Ex. G at 73:11-15, 74:7. But this is at odds with Edelman's testimony that her book ***was*** peer-reviewed. Plaintiff's Ex. E-1 at 115:11. It is also at odds with the e-mail Dr. Llanos sent to Posner in which she refers to Edelman's book with approval and suggests that Mellen had in the past published other books written by their colleagues at Loyola. Plaintiff's Ex. J-3. If it was well-known in the profession that Mellen Press is of questionable repute, it seems odd that Dr. Llanos, a member of the profession, would mention the company in an e-mail praising Edelman. While Posner may have honestly believed that publishing with Mellen Press was a disqualifying trait, there is at least some evidence that calls that belief into question and it is not within the Court's province to weigh such evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). And to the extent that Posner maintains that he was concerned with Edelman's failure to submit teaching evaluations in support of her application, DSOF at ¶ 27, that is at odds with the fact that the job posting did not specifically request teaching evaluations[10] and the fact that Edelman nevertheless stated in her

---

[10] The job posting directed applicants to submit "a current *Curriculum Vitae*, a teaching statement/research agenda, and a letter of interest outlining the candidates qualifications," and to provide "the names and email addresses of three individuals prepared to speak to their professional

application's cover letter that she would send "a sample of teaching evaluations" to Posner's Loyola address. Plaintiff's Ex. J-21.

Further, search committee member Brian Lavelle testified in his deposition that he did not select Edelman as a semifinalist because her scholarly interests were in Mexican poetry and not in Latin America. Defendant's Ex. E 32:19-21, ECF No. 57. Edelman responds by noting, with warranted derision, that "the claim that Mexico is not a part of Latin America is ridiculous." Response Brief 8, ECF No. 64. Beyond that, though, Lavelle's statement is contradicted by Edelman's application, which does indeed express an interest in Latin America generally. For example, it explicitly states that all of Edelman's research interests "undoubtedly include Latin American culture" and notes that Edelman has taught various courses on "Culture and Civilization of Latin America." Plaintiff's Ex. J-21. Alone, perhaps, none of these discrepancies are so "flagrant" as to suggest that the committee's beliefs were not honestly held. But taken as a whole, and in conjunction with the other circumstantial evidence discussed above, they create a genuine dispute as to the search committee's motivations.

The veracity of these stated justifications are further undermined by the fact that the search committee destroyed the records and notes it had created during the process once it had filled the position and after Dr. Llanos had passed along Edelman's concerns to Posner. Posner testified that the committee was under "strict instruction" to do so—from whom, he does not specify. Plaintiff's Ex. G 29:15-16. Regardless of the source of that instruction, moreover, Posner's concern about avoiding "catastrophic" professional and legal problems that could result if evidence of the search committee's deliberations became public, Plaintiff's Ex. J-4, can reasonably be understood to

---

qualifications for this position," and forward "additional materials related to teaching excellence and samples of scholarly publications to: David Posner, Ph.D., Chair." Plaintiff's Ex. J-6.

suggest that at least one reason that the records were destroyed was to insulate Loyola from discrimination claims like Edelman's. That inference is all the more reasonable when one considers that, according to a policy found on Loyola's website, search committee chairpersons are required to retain "search records" for 7 years from the date the search is completed. Plaintiff's Amended Declaration, Ex. 4, ECF No. 90.[11] This record falls short of warranting an evidentiary presumption that the missing records contained evidence favorable to Edelman,[12] but that does not mean that evidence of Loyola's destruction of the documents has no probative value: at minimum, there is a genuine dispute as to the reason Posner destroyed the documents, and given the timing

---

[11] Loyola argues that Edelman's exhibit is unauthenticated and therefore improperly before the Court. When ruling on a motion for summary judgment, courts may consider any material that would be admissible at trial. *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001). Authentication, a prerequisite for admissibility, "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). In other words, the proponent must establish only a prima facie showing of genuineness. *United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997). Edelman swore under penalty of perjury that the exhibit in question was available to the public on Loyola's website as of May 1, 2018, and the face of the document (which is branded with Loyola's logo) suggests that it is indeed a record retention policy applicable to search committees. That is sufficient to establish authenticity at this juncture. *See Hood v. Dryvit Sys., Inc.*, 04-CV-3141, 2005 WL 3005612, at *2 (N.D. Ill. Nov. 8, 2005) (authenticity established for purposes of summary judgment where plaintiff's counsel submitted affidavit that documents in question were retrieved from defendant's corporate website); *see also United States v. Brown*, 688 F.2d 1112, 1116 (7th Cir. 1982) ("Authentication relates only to whether the documents originated from [the alleged source]; it is not synonymous to vouching for the accuracy of the information contained in those records."). Loyola is free to argue that the policy did not in fact apply to the tenure track professor search committee or that the committee was unaware of its existence, but that question is ultimately for the jury.

[12] There is not an adequate basis in the present record to conclude that the records were destroyed because the committee members knew that litigation was imminent or likely. *See generally Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010) (refusing to impose spoliation sanction where plaintiff did not sufficiently establish that defendants knew litigation was imminent.) That the tenor of the dialog with Edelman had included no express concerns about any type of unlawful discrimination (much less age discrimination specifically— *see infra* at Part III) further weakens the argument that an adverse inference presumption should apply.

15

and apparent contravention of policy, a jury could reasonably conclude that he did so to conceal evidence of discrimination.

Finally, as to Loyola's general assertion that the other applicants were more qualified, Edelman has presented at least some objective evidence to the contrary. Of particular note is the undisputed fact that Edelman received a Ph.D. with a specialty in Latin American literature (exactly what the position posting called for) while one of the four position finalists did not yet have a Ph.D. and two of the others specialized in more narrow fields. *See* Plaintiff's Ex. J-24. The Court recognizes that "scholars are in the best position to make the highly subjective judgments related with the review of scholarship and university service," *Farrell v. Butler University*, 421 F.3d 609, 616 (7th Cir. 2005), but the import of evidence that Edelman was passed over for younger candidates who did not possess required, advertised, qualifications for the posted position does not require highly subjective evaluation of subtle distinctions among candidates. And in any event, here there appears to be ample dispute even among scholars as to Edelman's qualifications. Edelman's candidacy was strongly supported by both the current and former chairs of the department. According to Dr. Llanos, Edelman had "more experience in teaching" and a more established publishing record ("her scholarship record—which I have read—is strong") than the applicants selected to interview. Plaintiff's Ex. J-3. And the former department Chair, Dr. Wiley Feinstein, believed that she had a record of "extremely high-quality scholarship," Plaintiff's. Ex. J-9, and wrote a letter of recommendation on her behalf. *See* Response to PSOF at ¶ 14. That said, evidence of competing qualifications cannot establish pretext unless "there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002). That is not the case here, and had it been the only evidence presented, Edelman's claim would fall short. But in

light of the rough statistical evidence and evidence of false statements and suspicious behavior, however, it tips the scale in Edelman's favor and justifies the Court's conclusion that based on the evidence presented as a whole, a reasonable jury could find that Loyola refused to interview Edelman for the tenure track position because of her age. Loyola's motion for summary judgment is therefore denied with respect to Edelman's discrimination claim.

## III. Retaliation Claim

Edelman also maintains that Loyola retaliated against her for raising her concerns about the search committee by lowing her overall performance rating, terminating her non-tenure track employment contract, and refusing to interview her for a different non-tenure track position. To succeed on a retaliation claim, though, a plaintiff must show (among other things) that she engaged in a statutorily protected activity. *Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 657 (7th Cir. 2012). Because Edelman has failed to do so, her retaliation claim fails.

In her brief, Edelman focuses on the fact that she raised concerns related to the tenure track position search process with Dr. Llanos and that Loyola took adverse employment actions against her shortly thereafter. While filing a complaint with an employer may constitute statutorily protected activity, the complaint must indicate that the actions taken were because of some protected trait. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Id.* Here, Edelman did not even complain of discrimination; in her e-mail to Dr. Llanos, she stated only that that she believed that there was "a significant procedural error in the search process." Plaintiff's Ex. J-9. Nowhere does she mention that she believed the committee's rejection of her application

was based on her age or any other protected trait,[13] and thus her complaint cannot form the basis for a retaliation claim. And while the temporal sequence of events may be probative of causation, another required element, it is irrelevant to the inquiry into whether an internal complaint constitutes protected activity in the first place.

Edelman argues that it was "implicit in this situation that [she] was a woman over the age of 55" and that she did not specifically reference age discrimination because "she was afraid that doing so would cause her to lose her job." Plaintiff's Response Brief at 13-14. In support, she cites to *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625 (7th Cir. 2011) and *Shaffer v. American Medical Association*, 662 F.3d 439 (7th Cir. 2011). But *O'Leary* is inapposite, because unlike Edelman, the plaintiff in that case testified that he had expressly mentioned race discrimination when he complained to his employer. 657 F.3d at 632. The same goes for *Shaffer*, where whether the plaintiff had engaged in protected activity was not at issue. 662 F.3d at 444 (explaining that the issue before the court was whether a reasonable jury could conclude that the plaintiff's exercise of protected activity was a motivating factor behind the adverse employment action). There is simply nothing in the record (including the declarations which Loyola argues are inadmissible, *see supra* Part I) to suggest that Edelman complained that the hiring process had discriminated against her on the basis of her age. Her internal complaints about that process, then, did not constitute protected activity and so she cannot prevail on a claim that Loyola retaliated against her for alleging discrimination.[14]

---

[13] To the contrary, Edelman's email of February 3, 2013 to Dr. Llanos suggests that Edelman's concern was that as a non-tenure track instructor ("NTT") her candidacy for a tenure track ("TT") position was not receiving fair consideration—*i.e.,* that her snub was the product of elitism within the academic hierarchy, not age discrimination.

[14] The Court notes that filing a complaint with the EEOC constitutes a statutorily protected activity, *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 533 (7th Cir.2003), and Edelman did so in October 2013, five days before Loyola advertised an opening for another non-tenure track

\* \* \*

Edelman has presented multiple pieces of evidence which, taken together, would allow a reasonable jury to conclude that Loyola discriminated against her because of her age. Loyola's motion for summary judgment is therefore denied with respect to her discrimination claim. Edelman has not, however, established that she engaged in statutorily protected activity, so the Court grants Loyola's motion for summary judgment with respect to her retaliation claim.

Dated: May 17, 2019

John J. Tharp, Jr.
United States District Judge

---

position. But she does not argue anywhere in her brief that Loyola retaliated against her for doing so and most of the complained of conduct occurred well before she filed the complaint. In any event, Edelman failed to respond to Loyola's arguments regarding its failure to interview her for a different position after she filed with the EEOC. As noted above, a party's failure to respond to an argument results in waiver. *Bonte*, 624 F.3d at 466.